**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**MICHAEL W. RICKARD, II,**

                                        **Plaintiff,**                    **08-CV-0674A(Sr)**

**v.**

**WESTERN NEW YORK INDEPENDENT**
**LIVING PROJECT, INC.,**

                                        **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

            This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #4.

            Currently before the Court is defendant's motion to dismiss portions of

plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6).  Dkt. #3.  Specifically, defendant

seeks the dismissal of (1) plaintiff's allegations concerning violations of Title VII of the

Civil Rights Act of 1964 and the Age Discrimination in Employment Act contained in

plaintiff's first cause of action; (2) plaintiff's third cause of action for intentional infliction

of emotional distress; and (3) plaintiff's fourth cause of action for breach of an implied

employment contract.  For the following reasons, it is recommended that defendant's

motion to dismiss be granted.

## FACTUAL BACKGROUND

Beginning in or about October 2002 and continuing to on or about May 9, 2007, plaintiff was employed by the Western New York Independent Living Project, Inc. Dkt. #1, ¶¶ 5 and 9. According to plaintiff, the corporate purpose of the Western New York Independent Living Project, Inc. is "to aid and promote individuals with disabilities to live independently." *Id*. at ¶ 31. Plaintiff maintains that its corporate purpose was among one of the reasons he sought employment with defendant. *Id*. at ¶ 32. At the time he commenced his employment with defendant, plaintiff alleges he was given a personnel policies employee manual. *Id*. at ¶ 38. Plaintiff further alleges, "[s]aid personnel policies employee manual stated in Section 12, Reasonable Accommodation that Defendant would make reasonable accommodation for the medically - supported known limitations of a qualified employee unless to do so would cause undue hardship on the agency. In addition, said personnel policies manual stated in Section 8 that an employee shall only be subject to immediate termination if his conduct purposefully violates any or all of these policies within the manual." *Id*. at ¶¶ 39-40. Plaintiff alleges that the provisions of the employee manual were confirmed to him verbally and in writing to be the controlling policies and practices of defendant. *Id*. at ¶ 44. Accordingly, plaintiff concludes that such employee manual constituted an employment agreement with defendant. *Id*.

In or about February 2007, plaintiff was diagnosed with Bipolar Affective Disorder and Fibromyalgia. *Id*. at ¶ 6. By reason of these diagnoses, plaintiff claims to have suffered from weakness and pain in his muscles, ligaments and tendons. *Id*. at ¶ 12. Such pain and weakness in turn affected his major life activities causing him "fatigue, sleep disturbances, depression, anxiety, cognitive difficulties, migraine headaches and a general inability to complete tasks due to said pain and weakness." *Id*. Based upon his condition, plaintiff requested "reasonable accommodations" by defendant which plaintiff alleges defendant refused. *Id*. at ¶¶ 8-9.

Prior to the February 2007 diagnoses, plaintiff alleges that he "had exemplary job performance with only positive evaluations." *Id*. at ¶ 13. After the diagnoses, plaintiff alleges that he "believed and still believes that he could perform the essential functions of the employment position with reasonable accommodation." *Id*. at ¶ 14. Notwithstanding his requests for reasonable accommodations and what plaintiff alleges was the absence of undue hardship to the defendant in making such accommodations, plaintiff alleges that defendant failed and indeed, refused to make the requested accommodations and instead, immediately terminated plaintiff because of his disability. *Id*. at ¶ 15. Additionally, plaintiff alleges that absent defendant's discrimination and with reasonable accommodation of suitable equipment and training, plaintiff could satisfactorily perform the duties of his employment with defendant. *Id*. at ¶ 16.

Plaintiff further alleges that despite his reasonable efforts, he has been unable find comparable employment. *Id*. at ¶ 17. As a result of defendant's discrimination alleged in the complaint, plaintiff claims that he has and continues to suffer substantial losses, including the loss of past and future earnings and other employment benefits. *Id*. at ¶ 18. Moreover, plaintiff alleges that he has and continues to suffer impairment and damage to his "good name" and reputation and severe and lasting embarrassment, humiliation and anguish. *Id*. at ¶¶ 19-20. Finally, plaintiff alleges that defendant's conduct was outrageous, malicious, intended to injure plaintiff and was done with reckless indifference to plaintiff's protected civil rights. *Id*. at ¶ 21.

On or about September 11, 2007, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against defendant alleging unlawful discriminatory practices based on his disability. *Id*. at ¶ 10. Specifically, plaintiff's Charge of Discrimination states, in its entirety,

> I am a qualified individual with a disability. I was last classified as a Coordinator, Client Assistance Program. In around February 2007, I requested a reasonable accommodation and the Respondent denied my request. By letter dated May 9, 2007, the Respondent terminated my employment. I believe my employment was terminated based on my disability. This is in willful violation of the Americans with Disabilities Act.

Dkt. #3-2, p.10. Thereafter, on or about June 12, 2008, the EEOC issued a Dismissal and Notice of Rights stating,

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance

with the statutes.  No finding is made as to any other issues
that might be construed as having been raised by this
charge.

Dkt. #3-2, p.12.  Plaintiff, an attorney proceeding *pro se*, commenced this action on

September 11, 2008, alleging violations of Title VII of the Civil Rights Act of 1964, the

Americans with Disabilities Act, the Age Discrimination in Employment Act, the New

York State Human Right Law and his alleged implied employment contract with

defendant.

## DISCUSSION AND ANALYSIS

By the instant motion, defendant seeks dismissal of: (1) plaintiff's

allegations contained in his first cause of action of violations of Title VII of the Civil

Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA")

on the grounds that plaintiff failed to exhaust his administrative remedies and failed to

allege either in his EEOC Charge or his complaint any specific facts relating to

violations of such statutes; (2) plaintiff's cause of action for intentional infliction of

emotional distress because plaintiff has not and cannot allege the "outrageous and

extreme conduct" element sufficient to state a claim; and (3) plaintiff's cause of action

for breach of an implied employment contract, because the basis for plaintiff's claim,

the employee handbook, is insufficient to constitute an implied employment agreement.

**Dismissal Standard**

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). In setting forth this standard, the Supreme Court disavowed an often quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court explained that

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard ...

*Id.* at 561. The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing

> direct evidence of conspiracy sufficient to preclude
> dismissal, even though the complaint does not set forth a
> single fact in a context that suggests an agreement.  It
> seems fair to say that this approach to pleading would
> dispense with any showing of a "'reasonably founded hope'"
> that a plaintiff would be able to make a case ...

*Id.* at 561-62 (internal citations omitted).  The Supreme Court then limited *Conley* to

describing "the breadth of opportunity to prove what an adequate complaint claims, not

the minimum standard of adequate pleading to govern a complaint's survival."  *Id.* at

563.  The Supreme Court reiterated that it did "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on it face."  *Id.*

at 570.

The Court of Appeals for the Second Circuit recognized that *Bell Atlantic*

*Corp. v. Twombly* has created "[c]onsiderable uncertainty concerning the standard for

assessing the adequacy of pleadings."  *Iqbal v. Hasty*, 490 F.3d 143, 155

(2d Cir. 2007).  "After careful consideration" of that decision, the Court of Appeals has

concluded that "the Court is not requiring a universal standard of heightened fact

pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."  *Id.* at 157-58.

**Evidentiary Standard**

When ruling on a motion to dismiss, the court accepts the material facts

alleged in the complaint as true and draws all reasonable inferences in favor of the

plaintiff and against the defendants.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d

Cir. 1998); *Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994); *Atlantic Mutual Ins.*

*Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).  However, legal

conclusions, deductions or opinions couched as factual allegations are not given a

presumption of truthfulness.  *Albany Welfare Rights Organization Day Care Center, Inc.*

*v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied*, 410 U.S. 944 (1973).  "In

adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to

facts stated on the face of the complaint or incorporated in the complaint by reference,

and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Discount*

*Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner,*

*Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  "Where a plaintiff has relied on the terms and

effect of a document in drafting the complaint and that document is thus integral to the

complaint," the district court may consider the contents of the document "even if it is not

formally incorporated by reference."  *Broder v. Cablevision Systems Corp.*, 418 F.3d

187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  "If the documents referenced in the

complaint contradict the facts alleged by the plaintiff, the documents control and the

court need not accept as true the plaintiff's allegations."  *Olin Corp. v. E.I. Dupont De*

*Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL 839415 (W.D.N.Y. March 27,

2006).

## Failure to Exhaust Administrative Remedies

Defendant claims that because plaintiff's charge filed with the EEOC was limited to allegations of employment discrimination based upon his disability under the Americans with Disabilities Act, plaintiff has failed to exhaust his administrative remedies with respect to any other claims of discrimination.  Dkt. #3-3, pp.3-5.  Thus, defendant maintains that plaintiff's claims of a violation of Title VII and the ADEA must fail as a matter of law.  *Id.*

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  The Second Circuit has, however, recognized that claims not raised with the EEOC may nevertheless be pursued in federal court, provided that such claims are "reasonably related" to those filed with the EEOC.  *Id.*; *see also, Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam). Thus, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir. 1993); *Stewart v. INS*, 762 F.2d 193, 198 (2d Cir. 1985).  A claim of discrimination is reasonably related to a charge filed with the EEOC if: (a) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; or (b) the claim

alleges retaliation by the employer against an employee for filing an EEOC charge; or

(c) the plaintiff alleges further incidents of discrimination carried out in precisely the

same manner alleged in the EEOC charge. *Butts*, 990 F.2d at 1402-03.

In making a determination of whether claims are reasonably related,

courts should focus "on the factual allegations made in the [EEOC] charge itself,

describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v.*

*Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal citations omitted). Generally, "[c]ourts

will not permit a claim that is based on a wholly different type of discrimination to be

brought if it was not initially asserted in the EEOC charge." *Harris v. American*

*Protective Services of New York, Inc.*, 1 F.Supp.2d 191, 195 (W.D.N.Y. 1998), *citing*

*Peterson v. Insurance Co. of N. America*, 884 F.Supp 107, 109 (S.D.N.Y. 1995).[1]

---

[1] *See Marshall v. New York City Bd. of Education*, No. 07-4561-cv, 2009 WL
928083 (2d Cir. Apr. 7, 2009) (affirming district court's grant of summary judgment in
favor of defendant on plaintiff's religious discrimination claim, because plaintiff's claim
of religious discrimination was not reasonably related to charge of race and gender
discrimination); *McKinney v. Eastman Kodak* Co., 975 F.Supp 462, 466 (W.D.N.Y.
1997) (motion to amend complaint to add claims of sex discrimination and Family and
Medical Leave Act violations denied as futile where EEOC charge alleged only age
discrimination and retaliation for complaint about age discrimination); *Mathura v.
Council for Human Services Home Care Services, Inc.,* No. 95CIV4191,1996 WL
157496 (S.D.N.Y., Apr. 2, 1996 (sex discrimination claim not reasonably related to race
discrimination claim), *aff'd*, 107 F.3d 3 (2d Cir. 1997), *cert denied*, 522 U.S. 829 (1997);
*Nelson v. Cigna*, No. 3:95CV557, 1995 WL 848514 (D. Conn. Dec. 7, 1995) (race and
sex discrimination claims not reasonably related to age and disability discrimination
claims); *Dennis v. Pan American World Airways*, 746 F.Supp. 288, 291 (E.D.N.Y. 1990)
(age discrimination claim under ADEA dismissed where plaintiff's EEOC charge
asserted only racial discrimination); *Kawatra v. Medgar Evers College of the City Univ.
of New York*, 700 F.Supp. 648, 654 (E.D.N.Y. 1988) (marital status discrimination claim
not reasonably related to plaintiff's charges of sex and national origin discrimination with
the EEOC); *McPartland v. American Broadcasting Companies, Inc.*, 623 F.Supp. 1334,
1339 (S.D.N.Y. 1985) (plaintiff's age discrimination claim dismissed where her EEOC

However, in certain instances, courts have recognized that claims of race and national origin discrimination may "overlap or even be indistinguishable depending on the specific facts of a case." *Deravin,* 335 F.3d at 201.

In the instant case, plaintiff filed a Charge of Discrimination with the EEOC against defendant on or about September 11, 2007, alleging unlawful discriminatory practices based on his disability. Dkt. #1, ¶ 10. Specifically, plaintiff's Charge of Discrimination stated, in its entirety,

> I am a qualified individual with a disability. I was last classified as a Coordinator, Client Assistance Program. In around February 2007, I requested a reasonable accommodation and the Respondent denied my request. By letter dated May 9, 2007, the Respondent terminated my employment. I believe my employment was terminated based on my disability. This is in willful violation of the Americans with Disabilities Act.

Dkt. #3-2, p.10. Thereafter, on or about June 12, 2008, the EEOC issued a Dismissal and Notice of Rights stating,

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

Dkt. #3-2, p.12. The factual allegations in plaintiff's EEOC charge unmistakably describe purported discrimination based on plaintiff's disability. There is nothing in

charge only mentioned sex discrimination, harassment, retaliation and discriminatory discharge).

plaintiff's EEOC charge relating in any way to incidents of discrimination based on race, color, religion, sex or national origin under Title VII or age discrimination pursuant to the ADEA.  Because an assertion of discrimination based on disability is conceptually distinct from allegations of discrimination pursuant to Title VII and the ADEA, the EEOC would not have been alerted to investigate such claims.  Moreover, there is nothing in the record before this Court to support the conclusion that a claim of discrimination based on plaintiff's disability is reasonably related to claims of discrimination pursuant to Title VII and the ADEA.  *See Butts, supra.*

In opposition to defendant's motion to dismiss, plaintiff does not dispute that his EEOC charge only contained an allegation of discrimination based on disability. Dkt. #6.  In fact, in his "Answering Affidavit" submitted in opposition to defendant's motion to dismiss, plaintiff states, "[a]lthough, Affiant is presently unaware of other discriminatory actions taken by defendant except based upon Affiant's disability, Affiant broadly drafted his Complaint to include other grounds for the discriminatory termination of his employment in the event Defendant's Answer or Disclosure revealed other discriminatory actions for termination."  Dkt. #6, ¶ 6.  Accordingly, plaintiff admits that there is no basis in fact to support his claims for discrimination pursuant to Title VII or the ADEA as alleged in his complaint.  Notwithstanding this admission, plaintiff submits that defendant's motion to dismiss is premature and should be denied because defendant's answer or discovery could reveal other discriminatory conduct.[2]  For the

_____

[2] The Court notes, as defendant did in its motion to dismiss, that Rule 11(b)(3) of the Federal Rules of Civil Procedure provides that by submitting a pleading to the

foregoing reasons, it is recommended that defendant's motion to dismiss plaintiff's allegations of discrimination based on Title VII of the Civil Right Act of 1964 and the Age Discrimination in Employment as contained in plaintiff's first cause of action be granted because plaintiff has failed to exhaust his administrative remedies as to those charges.

## Intentional Infliction of Emotional Distress

Plaintiff's third cause of action seeks compensatory and punitive damages for intentional infliction of emotional distress. Specifically, plaintiff alleges that one of the primary reasons he sought employment with defendant was because of defendant's stated corporate purpose, "to aid and promote individuals with disabilities to live independently." Dkt. #1, ¶ 31. However, by reason of defendant's "complete and utter failure to comply with its corporate purpose by its refusal to make reasonable accommodations for [plaintiff] and its termination of him because of disability," plaintiff suffered from the intentional infliction of emotional distress. *Id*. at ¶ 33. Defendant seeks the dismissal of plaintiff's third cause of action on the grounds that the allegations in plaintiff's complaint fall far short of satisfying the pleading requirements for a claim of intentional infliction of emotional distress.

---

Court, an attorney (or unrepresented party) certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." While this Court may, under the circumstances presented herein, *sua sponte* order plaintiff to show cause why the "allegations" contained in the complaint do not violate Rule 11(b), the Court declines to do so in light of the admissions made in plaintiff's "Answering Affidavit" submitted in opposition to defendant's motion to dismiss.

Under New York law, in order to state a claim for intentional infliction of emotional distress, a plaintiff must allege, "(i) extreme and outrageous conduct, (ii) intent to cause or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress. The first element – outrageous conduct – serves the dual purpose of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993). New York courts have routinely been strict and rigorous in the application of the standards and satisfaction of the elements of a claim for intentional infliction of emotional distress. In fact, "liability has been found only where the conduct as been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303 (1983).

Plaintiffs in employment law cases face an even more difficult challenge because New York courts are "wary of allowing plaintiffs to recharacterize claims for wrongful or abusive discharge, which are not recognized under New York law, as claims for intentional infliction of emotional distress." *Lydeatte v. Bronx Overall Economic Development Corp.*, 00Civ.5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001). Thus, courts will not permit a plaintiff to avoid the consequences of the employment-at-will doctrine by allowing them to bring what amounts to a wrongful discharge claim

under another name. *Id.*, *citing Ahmed v. Compass Group*, No. 99CIV10032, 2000 WL 1072299, at \*10 (S.D.N.Y. Aug. 3, 2000) and *Mariani v. Consolidated Edison Co. of New York*, 982 F.Supp. 267, 275 (S.D.N.Y. 1997). "As a result, New York courts routinely dismiss claims for intentional infliction of emotional distress in the employment context, except where such claims were accompanied by allegations of sex discrimination and, more significantly, battery." *Lydeatte*, 2001 WL 180055 at \*2, *citing Ahmed*, 2000 WL at \*10.

In the instant case, plaintiff's allegations are woefully insufficient to satisfy the rigorous pleading standard required for a claim of intentional infliction of emotional distress. Plaintiff's allegations that because defendant had failed to live up to its corporate purpose and failed to provide plaintiff with the reasonable accommodations he requested and thereafter terminated plaintiff fall far short of the requisite extreme and outrageous conduct necessary to state a cause of action for intentional infliction of emotional distress. Moreover, defendant contends that plaintiff's allegations are nothing more than a thinly veiled attempt to circumvent the consequences of the employment-at-will doctrine and to assert a wrongful discharge claim under another name. Dkt. #3-3, p.8. In the alternative, defendant argues that even assuming *arguendo* that plaintiff had stated a claim for intentional infliction of emotional distress, such a claim must nevertheless be dismissed because the conduct about which plaintiff

complains falls within the ambit of traditional tort and statutory liability thereby making the claim of intentional infliction of emotional distress duplicative.[3]

Even accepting, as this Court must on a motion to dismiss, the material facts alleged in the complaint as true and drawing all reasonable inferences in favor of the plaintiff and against the defendant, this Court agrees with defendant that plaintiff's allegations are insufficient to satisfy the rigorous pleading requirements of a claim for intentional infliction of emotional distress. Moreover, this Court further agrees with defendant that plaintiff's claim for intentional infliction of emotional distress is an attempt, albeit unsuccessful, to avoid the consequences of the employment-at-will doctrine and to assert a wrongful discharge claim, not recognized under New York law, under another name. Accordingly, this Court recommends that defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress be granted.

**Alleged Breach of Implied Employment Contract**

In deciding a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992). Moreover, "when a plaintiff

---

[3] Although not raised by defendant in its motion to dismiss, this Court notes that based upon the record before it, it appears that plaintiff's claim for intentional infliction of emotional distress is barred by the applicable one-year statute of limitations. *See Mariani v. Consolidated Edison Co. of New York, Inc.*, 982 F.Supp 267 (S.D.N.Y. 1997). As discussed above, plaintiff's employment was terminated on May 9, 2007 and plaintiff commenced the instant action on September 11, 2008.

chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *International Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (1995). Here, plaintiff neither attaches to the complaint nor incorporates by reference the employee handbook upon which he so heavily relies to support his claim for breach of an implied employment contract. Notably, plaintiff cites to two specific provisions in the employment handbook, sections 8 and 12 in an effort to establish that the employee handbook created a binding employment agreement between plaintiff and defendant. Dkt. #1. Thus, in accordance with the Second Circuit precedent discussed above, this Court will consider the entire employee handbook for purposes of making its recommendation on defendant's motion to dismiss plaintiff's breach of implied employment agreement claim.

Plaintiff's fourth cause of action for breach of an implied employment contract is premised on the theory that the employee handbook provided to plaintiff at the time he commenced his employment with defendant constituted a binding employment agreement. Dkt. #1, ¶¶ 38-45. Specifically, plaintiff alleges, "[s]aid personnel policies employee manual stated in Section 12, Reasonable Accommodation that Defendant would make reasonable accommodation for the medically - supported known limitations of a qualified employee unless to do so would cause undue hardship on the agency. In addition, said personnel policies manual stated in Section 8 that an

employee shall only be subject to immediate termination if his conduct purposefully violates any or all of these policies within the manual." *Id*. at ¶¶ 39-40. Plaintiff further alleges that despite his reasonable request, defendant "failed and refused to make reasonable accommodation ... although it would not cause undue hardship on the agency." Dkt. #1, ¶ 41. Thereafter, plaintiff alleges that he was "immediately terminated without any allegation or proof that his conduct purposely violated any or all of the policies within the manual." *Id*. at ¶ 42. Plaintiff therefore concludes that his termination "directly violated the provisions of [d]efendant's own employee manual." *Id*. at ¶ 43. By reason of the provisions of the employee manual that plaintiff alleges were confirmed to him verbally and in writing to be the controlling policies and practices of defendant, plaintiff concludes that such employee manual constituted a binding employment agreement with defendant. *Id*. at ¶ 44.

In support of its motion to dismiss, defendant states that plaintiff's exclusive reliance on section 8.2 of the employee handbook is misplaced insofar as plaintiff ignores other provisions concerning the termination of employment. Dkt. #3-3, p.12. Defendant explains that section 8.2 merely provides examples of terminable conduct and it does not, as plaintiff would have this Court believe, "provide for the only circumstances under which an employee can be terminated." *Id*. Specifically, defendant states that the prefatory language of section 8 provides in pertinent part, "termination may be undertaken at the discretion of the Executive Director and/or the immediate supervisor." Dkt. #3-2, p.49. Moreover, section 8.2 provides, "[i]n any situation felt by the Executive Director to warrant immediate termination, termination will

be without notice and the employee will forfeit any and all monetary compensation or compensatory time or any unused vacation, sick leave or personal days." *Id*. According to defendant, such language is wholly consistent with an at-will employment relationship. In addition to the foregoing, defendant refers the Court to the "conspicuous prefatory language in the employee handbook, which states, in unmistakable and unequivocal language, that[,]"

> Any employment relationship with the WNYILP [WNY Independent Living Project] is of an 'at will' nature, which means that the employee may resign at any time and the employer may discharge the employee at any time with or without cause. It is further understood that this 'at will' employment relationship may not be changed by any written document or by contract, unless such change is specifically acknowledged in writing by an authorized executive of this organization.

Dkt. #3-2, p.34.


Under long-settled New York law, "an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Baron v. Port Authority of New York and New Jersey*, 271 F.3d 81 (2d Cir. 2001), *citing Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (1987). New York does, however, recognize a cause of action for breach of contract where a plaintiff can establish the following, (1) an express written policy limiting the employer's right of discharge, (2) the employer made the employee aware of the policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment. *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458 (1982); *Lobosco v. New York Telephone Company/NYNEX*, 96 N.Y.2d 312

(2001). "The New York Court of Appeals has admonished that this is a 'difficult

pleading burden,' *Sabetay*, 69 N.Y.2d at 334-53, 514 N.Y.S.2d 209, 506 N.E.2d 919,

and that '[r]outinely issued employee manuals, handbooks and policy statements

should not *lightly* be converted into binding employment agreements.' *Lobosco*, 96

N.Y.2d at 317, 727 N.Y.S.2d 383, 751 N.E.2d 462 (emphasis added)." *Baron*, 271 F.3d

at 85.


In the instant case, the employee manual upon which plaintiff relies to

sustain his cause of action for breach of an implied employment agreement contains

the following unmistakable and unequivocal disclaimer on page 1,

> The purpose of the following Personal Practices of The
> Western New York Independent Living Project, Inc.
> (WNYILP) is to provide a uniform practice with respect to
> working conditions.  These Personnel Practices establish a
> pattern for employment practices and serve to acquaint
> employees with their rights, privileges, and responsibilities.
> Any employment relationship with the WNYILP is of an "at
> will" nature, which means that the employee may resign at
> any time and the employer may discharge the employee at
> any time with or without cause.  It is further understood that
> this "at will" employment relationship may not be changed by
> any written document or by contract, unless such change is
> specifically acknowledged in writing by an authorized
> executive of this organization.

Dkt. #3-2, p.34.  This disclaimer plainly conveys defendant's intention that any

employment is "at will" and further that such "at will" employment may not be changed

unless specific action by an authorized executive is taken.  In an effort to circumvent

this disclaimer, plaintiff argues that the disclaimer is not explicit and further, that there is

an ambiguity between paragraph 8 of the manual and the disclaimer language on page

1.  Such a conclusion is not objectively reasonable in light of the allegations in plaintiff's complaint together with the language in the employee manual.  There is nothing in any of the language identified by plaintiff that would serve to limit the right of defendant to hire, fire, promote, demote, or take any other employment action.  *See Baron,* 271 F.3d at 86.  To the contrary, the language on page 1 of the manual specifically disclaims any intent by the defendant to create an employment relationship other than an "at will" relationship absent express action by an authorized executive.  *Id*.  Notably, the complaint is devoid of any facts alleging any such express action by an authorized executive.  Accordingly, this Court recommends that defendant's motion to dismiss plaintiff fourth cause of action for breach of an implied employment agreement be granted.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that defendant's motion (Dkt. #3), to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) be **GRANTED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:     Buffalo, New York
April 30, 2009

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**